In Ray Rachelli Rachelli Nope. Barking and wireless. Sorry. Mr. Katz. You're reserving five. Yes, your honor. Okay. Your honors may please the court. The district court below incorrectly ruled that the term access point had been redefined by the patentee as Wi-Fi public hotspot. No such binding lexicography exists. The construction should be reversed and the case remanded. To provide some context, I'd like to describe the invention that's cited by, for example, claim one of the 306 patent. The invention or the claim generally claims a computing device. Page nine of the blue brief, you say, indeed, the district court's speculation that a laptop user could or create a wired connection to a Wi-Fi public hotspot was speculative and not based on any disclosure in the patent or on any evidence involving the understanding of a skilled artisan. What evidence do you have to support your argument that these are mutually exclusive? So the, at the district court, the court looked at one of the references that was in the description of a wired connection. It didn't preclude a wireless connection. However, I would point out that the computing devices or hotspots that are described in the specification refer to specifically a wired connection between, for example, a hotspot and an IP-based network. So if there is a wired connection there, it is not wireless. And in addition to that, it does not make sense if there is a wired connection to supplement it in some way with a wireless connection. You use AP for access points so the rest of the folks in the room understand. Um, you say at pages six and seven, uh, that, um, the use of the term these APs in the specification suggests that, uh, and I'm quoting, these APs are but one type of AP. How does that suggest it? What other language in the specification support your reading? Right. The, the, the, the word these refers back to the Wi-Fi public hotspot. If, if one were to take the word these out, it would be more suggestive that it's definitional of APs. And in this case, uh, What else in there supports your reading? Well, well, for one example, the, the fact that the patentee has referred to these APs and not just APs in general. I know. I, I, I said, what else have you got in the specification? You say one example, give me some more. Okay. Um, referring to appendix 113, this is, uh, of the 306 patent column two, it references wireless networks, such as 802.11 networks. That would be in line eight of column two, line 16 of column two. It references such as 802.11 indicating that there are other wireless networks. There are other possibilities. In addition to that, there are references in column two, beginning, uh, line 35, going down to line 47, where it references Wi-Fi access points and describes Wi-Fi and cellular. And obviously if access point had been intended to be redefined, there would be no need to What other wireless networks do you think are referred to there in column two, line eight or so, where it is referring to handovers and wireless networks, such as 802.11 networks. What are all the wireless networks do you think that it's referring to here other than Wi-Fi? A wireless would include any wireless and it could include cellular networks. And then down in column two, uh, line 51, it also mentioned satellite communications. So at the, going back to the, to the time of the invention, um, some of the, some of the networks were 802.11 networks. The other networks that were in popular use were cellular networks. And that's how around the 2006, 2007 timeframe, a lot of computers or laptop computers would connect to the internet using, um, network cards that worked off of a cellular network. And this, the cell code providers would sell network cards that were effectively a cellular modem. So there, there's a number of, uh, wireless networks that are, are possible. So the column two does mention other types of wireless networks, as you've pointed out, but as I understood the red brief, the point being made there was when you look at what the specification is disclosing, it's something that would only be applicable with Wi-Fi. It wouldn't be applicable with cellular. Do you agree with that? And if you don't, what could you point to in that later portion of the specification, say, starting after column 10 that would support your position? Um, I think it would include, uh, cellular as, as well. Um, so what, what can you point me to specifics in, you know, the section called best mode for carrying out the invention, something that's not just the background of the invention section to help me see that? For example, um, what's been defined as the STAs or stations also are described in the cellular context at column five lines, uh, 38 through 40, uh, describing cellular protocols and the movement of, that's still part of the background art where you're pointing to. Now, I think if, uh, if you look at column five lines around 54, that's where I think there's the disclosure of the invention. So is there something beyond that that talks about cellular? There may be, uh, references specifically to cellular, but at the same time, there are not references specifically to, uh, Wi-Fi. There are references to wireless and the background at the time in the context of wireless would support, uh, Wi-Fi or cellular. So while I can't point to cellular, I cannot necessarily point to satellite at the same time. These are not limited to Wi-Fi either. They're simply, uh, referring to, um, wireless. There are some references to a wireless network interface card as well. Those are simply wireless. They can equally refer to cellular network interface cards as they could, uh, a Wi-Fi network interface card. So I'd like to provide a little context. Can you help me just with this? This, um, and if you look at figure one, right, which is kind of architecture of the arrangements that, um, can you describe, are we talking about this, um, up-down double arrow lightning bolt like thing, whether that has to be a Wi-Fi connection or can also be a cellular connection? Is that the specific dispute that's at issue? I believe it could be both. Also column 11, uh, around line 37, 39, um, actually, I'm sorry, around line 44 talks about it being a, uh, a wired connection as well. Um, but, but that's what we're looking at is the nature of the, of the connection in that, um, lightning bolt like thing. The lightning bolt, it's my understanding that that would typically denote wireless and yes, could be Wi-Fi or cellular, some, some type of wireless. Okay. And, and I think you, you ended your, um, answer to Judge Stoll by saying, um, if you started at the bottom of column five under the heading disclosure of invention, that if you read through that, it would not be limited to Wi-Fi, but is more generic as to wireless. Do I understand that right? Uh, generally, in terms of the disclosure of the invention, uh, yes, it, it relates to wireless and it's not restricted to a particular type of wireless. Now there are certain, um, there are a number of inventions in here. There are, there's over 30 columns of disclosure. So there are some inventions that are described such as the viral spreading that would lend themselves to Wi-Fi, but other disclosures, other inventions are not. A lot of this invention goes to the handoff between, um, uh, from a client to, uh, another hotspot or sharing of hotspots between clients and so forth. Uh, those, uh, can relate to other types of, um, of wireless. And specifically, you have a lot of things where you say could be one or the other. Are there any specific, uh, embodiments in the specification that disclose, uh, cellular cells as access points? Well, yes, it's, uh, it's in the background art, um, and it would be column, column two beginning, um, I guess around line 58, but please bear in mind that the district court, uh, made their lexicography determination based on an alleged redefinition that was in the background art. One way, I guess, of framing what at least I'm worried about or thinking about is, um, posit for a minute that you're right and the district court was wrong about the lexicography. Put that aside. Now the question is, does the spec show that when describing the invention, at least a wifi connection is what the access point has to have? Uh, in general terms, um, again, there, there, there's more than one access point. So as the, between the hotspot and, and the clients that is often referred to as, as wifi in, in some of the, when I, when I talk about the viral spreading that that would be wifi, but in other aspects of the invention, it could be any type of, um, of wireless. But then there's another access point referred to in the claims that exists between the hotspot and the IP network that is a completely different, um, access point. And the second access point, that's the first access, the first access point, which is defined in the claims as being wireless, right? Yes, it is. It is explicitly wireless, which provides additional evidence that if the you would not have had to add the term wireless. Ms. Woodworth. Good morning, Your Honor. May it please the court. I want to start with the Hillel case that was cited actually by the appellant in this case. That case says that there are no magic words for lexicography. All that we're looking for is some language that expresses a clear intent to redefine a term. And as we submitted in the red brief here, we have not just one clue. We actually have five distinct clues in the definitional statement. Does your argument turn on our concluding that there was a definition? I think that there was a clear definition, Your Honor, but I don't think that the argument definitively turns on that. Because the sentence that was the, really the basis of the claim construction that we're given is susceptible of different readings, even starting with what the access point, whether it refers to hotspot, to public hotspot, or to Wi-Fi public hotspot, three different levels. And in the neighborhood of that very thing, the column seems to refer to private hotspots, the locked kind, as access points. So I'm not sure that that sentence meets the standard of clear redefinition of a term with, I think, what is an undisputed ordinary meaning. Hence my focus on the spec as a whole, what does it tell you? Because I'm not at all sure that that sentence does it for you. Okay. Well, there's a lot to unpack there. So let me try it and take it in pieces. The first thing is, what is it that we are redefining access points as in that statement? So we are at column one, starting at lines 30, where it says, currently there's a growing number of Wi-Fi public hotspots per end, or access points, quotation APs. So clearly there is a definition going on here, at least as to the acronym AP. I would say that it is not clear that there is a definition going on. It's a separate point what it's defining as, if it's defining anything at all. Because it could mean, which is one example of an access point? I don't think that the word or... So that's neither disjunctive nor in a positive. Right. But I don't think that that's a typical meaning of the word or in the English language. That's what our opponent suggests. And let me give you an example. And this is what we went through in the district court during the Markman hearing. You might use it disjunctively, like you to say, I want a soda or a pop. And for those of you not from the Midwest, those are the... Actually, those two were examples of examples where they are using for the same words, different words for meaning the same thing. But what you might say is, I want coffee or tea. And there disjunctively, we have two separate examples. But what you wouldn't say is, I want a beverage or tea. Where you've got a general phrase and then you put an or conjunctively with a more specific example. That's just not proper English usage for the word or. In this paragraph, I think that we think that it is clear that you're using or to redefine two different sets of terms with different words to mean the same thing. It's just like pause technologies case, the conclusion that the court came to there with respect to the way that or is being used. Which term in the three-word phrase do you think that the phrase access point has just been redefined to mean? So I would submit that it's all three, that it's Wi-Fi public hotspots. The problem with your argument is that it then is undermined because the very word AP is used to describe things that aren't Wi-Fi public hotspots. It says the AP includes something that's a private hotspot, for example. That's not a Wi-Fi public hotspot. So it undermines your position. For example, where it says, just in the paragraph right below the one you're are not locked. Then it says other APs are placed by individuals are locked or closed, thus not allowing passing STAs to utilize them. Those are private hotspots and yet it's using your term AP. So I would actually submit that those are not private hotspots. Those are public, they're just locked. There's a different type of hotspot that's actually private. So like if you're, you know, on your mobile phone and you hit the security button and you're trying to look for what hotspots are in this area. If you actually see it come up, even though it's got the lock there, those are public hotspots. They may be locked, but they're still publicly accessible. There are other hotspots and there might actually be one in this court that won't even come up. Those are private hotspots. As I'm walking through the court, I'm saying that the Wi-Fi hotspot in my home is a public hotspot. It is public in the sense that it could be publicly accessible. And if you have not set the security on it so that you require a password, it absolutely is. Like in apartment buildings, it happens all the time that people have the same exact hotspot that you have in your home, but haven't set the security. And they may have neighbors that are, you know, leeching onto them. So I think that there's a clear difference between a private hotspot and a locked hotspot, which is in this specification. So play with the word or, when in column two at 56 through 61, it says the APs or the cellular cells. I think I know what your argument is going to be, but it could be the other way. I don't think that it could though in context, just the same way that I think that if you read the access points definitional statement in context, the context tells you which way the word or is being used exactly the way that the court looked in pause technologies. You know, is it being used disjunctively to separate two different alternatives, or is it being used to redefine in different words, really the same concept? So I agree with you that those are two different ways to use the word or, but they're both proper. They're both exactly acceptable within the English language. And one of the things that our opponents said was, I wouldn't say, well, it's not in quotes. There are other differences. I agree with you. There are different clues as to whether or not it's definitional, but I think that those are completely appropriate uses of the word or. And one of the things I wanted to point out was that our opponent says, had you used an IE instead of an or in that access point, if you go back to that. So if it had said Wi-Fi public hotspots per end IE access points, they argue then you would fall within the cases that have found lexicography, you know, with a parenthetical that's defining the term. But you still have the question of which of the three words in the three word phrase was being defined. That's true. And let me come back to that in just one second. By the way, what is a hotspot? That's a good question. I don't know that I know that. Are there non-Wi-Fi hotspots? Not that I'm aware of. So hotspot is a term used only when the 802.11 standard is being used for certain wireless communications? As far as I know, your honor, but that's far from definitive. So my point was that IE and or are actually used in the paragraph from where we were in column one. And now I'm at line 38. And this is getting to the point that we've been discussing. That other APs are placed by individuals in their premises but are not locked. IE they're open. So we're redefining not locked as open. The next sentence then says other APs placed by individuals are locked per end or closed. So we're defining the word locked as closed, this time using a per end or the exact same way that the patentee just used an IE in the sentence before. Yet the other parenthetical use of the word or you would not say is an IE. Exactly. How do you know that that's so? I mean, when the lexicography is supposed to be very clear, how do we know that that's so? You've said that it's your position that it's disjunctive, but why? I think we know from the context. If you start with the column two, line 52, where this phrase is taken, it's talking about the concept of handovers. And it says this concept of handovers is taken from cellular networks. Handovers usually, and then it explains managed networks. It says the network operator in many cases chooses to add cells where coverage or capacity are needed in managed networks, the APs. And then it's referring back to its analogy of where it's taking the concept of handovers from or cellular cells are synchronized. And so I think it again is the context. Trying to make an analogy to the cellular world as to what we're going to do in the Wi-Fi world with APs. What about the fact that up above that, that very same column around line 40, it's talking about having sometimes an approach would be to have a handset that supports both Wi-Fi and cellular, and to have a handover conversation between Wi-Fi and cellular in order to be able to provide this network. So that again, though, I think is telling you solutions that are already out there, that you can have a handoff. And what you are going to have with these STAs you have to have Wi-Fi, but you may also have cellular. Setting aside your lexicography argument for a minute, what other support do you have for the idea that this invention doesn't at all envision the use of cellular at all? So I think one thing that you already pointed to is the fact that it says very clearly at line two, starting at, excuse me, column two, starting at line 30, that what we have is a service that is compete with or complement cellular. That is a very clear statement that this invention is not cellular. It's something that's... Which column is that in? Two lines, 32 ending in 34 is kind of the key phrase, that this service is competing with or complementing cellular service. That's very clearly a statement that the invention itself... But complementing would suggest that it uses part of it, right? In addition to using part of it, absolutely. It may be that what we want to do is better the Wi-Fi part so that we can do that handoff. But the focus of the invention throughout the background, and I had five goals here, stated quote of the invention that I was going to point you to in the background, but I'm going to switch gears and try and do it in the other parts of the specification because the same point can be made. You can go through the background and I think you'll come away with a very clear and the only distinction that can be made or the only conclusion that can be drawn is that what he was trying to do is improve upon Wi-Fi. But let me do it in other portions. Can I ask one very specific thing? So in the sentence that follows, the supposed definitional sentence, these AP allow Wi-Fi enabled devices, which we refer to as STA, that parenthetical seems definitional and I think maybe you've treated it as such, is that right? I believe that that's correct, yes. So what do you make of column five, line 38, 39, that to my eyes uses the term STA to refer to any old cellular phone without any reference to Wi-Fi capability? I haven't, Your Honor, focused on that passage. I would say that it obviously starts with the situation in Wi-Fi is very different from the situation in cellular networks. Then it's describing this process of in the cellular world of location areas, which is pre-Wi-Fi cellular phones with no dual modes. I think though that a cellular phone is going to have both, so it would still be- That's a new thing. That's true, that would be new. So I don't know, Your Honor, I don't know what to make of that, but we're not defining STA. But I guess what I'm wondering what to make of is just how linguistically precise various usages are in this spec or not. Certainly, and what we're doing here is we're looking at public notice. And when you've got things like setting off a term with the word or, when you've in quotations, all of these things are suggesting that you are defining the term. And I want to get back, if I could, for a second to Judge Stoll's question about the remainder of the specification. And I think this answers your question too. My opponent was not able to cite to anything anywhere else besides the background where cellular is discussed. But what I can do is point you to several places- And just to, I mean, this is like a deposition question or something. So he wasn't able to, are you? I am. Thank you. Thank you for the opportunity. I can point you to several of them. And I think what's key here is that a number of them come with the language, a novel aspect of the invention. And in each one of these, it is something that is unique to Wi-Fi. It is all Wi-Fi centric. So let's see. Let's start at column eight. And as I said, I was planning to do this with the background. So I'm going to try and do it quickly a little bit on the fly. But column eight, line 15, it says another aspect of the invention is to prevent exhaustion of resources at the APs. You're going to have to wrap up pretty quickly. Okay. I'll try and give you these very quickly. The resources point goes back to the background where it says that Wi-Fi protocols have limited resources. The Wi-Fi standard only allows you to connect to a certain number of STAs. So that's one Wi-Fi. Just a few lines later. Another novel aspect of the invention is to save battery power and reduce network load by reducing the number of location updates in Wi-Fi. Again, only a Wi-Fi problem. Later in column eight, starting at lines 45, configuring the security and new STAs to work with an existing AP might be a tedious job. It then explains how you need to configure them for security. Only a Wi-Fi problem, not something that's true of cellular. Column nine, lines 21, another novel aspect of the invention takes advantage of the fact that the wireless network... Council, finish your sentence. Wireless, I may have a run on here, but the wireless network is local. Again, that's true only of Wi-Fi. The very nature of cellular is that we're looking at wide access. So throughout the specific... That's it. Thank you, Your Honor. And for these reasons, we would ask that the court affirm. Mr. Katz, I'll give you an extra minute. Thank you, Your Honor. Your Honor, I would point out that we tend to also be encroaching on factual findings as to what the patent's disclosures would have reasonably conveyed to a skilled artisan at the time of the invention, which would be part of section 112 in the written description requirement. In this case, the district court's order was just in the area of claim construction. So the written description aspect is separate from that. I would also point out that the alleged redefinitions didn't accord with any linguistic custom in the specification as to definitional text. There were other definitions where IE, for example, was used, but there was no consistent linguistic formula in this case used to define terms, especially not the one cited by the district court. I would also point out that in the context of the invention, for example, generally claim one of 306 claims a computing device that serves a client and then is also connected to the internet. If one were to call that computing device a hotspot, 90% of this invention describes how that hotspot facilitates communication with the clients, how it provides address translation, how it handles connections with the client, how the client can talk to more than one hotspot, as it were, how it handles data security, privacy, and handoffs, and tunneling of data packets. There is no limitation on how that hotspot connects to the IP network or the internet. There's no requirement that that hotspot can only connect to the internet through another hotspot, which would be the requirement suggested by the district court's construction. If there's no questions, thank you for your attention. Thank you, counsel. The matter will stand submitted.